UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CARMEN OLIVER,
O/B/O, C.B.O., a minor

    Plaintiff,                               Civil Action No. 14-11005

v.                                        HON. SEAN F. FOX
                                             U.S. District Judge
                                             HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL          U.S. Magistrate Judge
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

In this cessation of benefits case, Plaintiff Carmen Oliver ("Plaintiff") brings this action on behalf of her minor daughter, C.B.O. ("Claimant") under 42 U.S.C. §405(g), challenging Defendant Commissioner's determination that Claimant was no longer disabled as of October 1, 2010. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment be GRANTED and that Plaintiff's Motion for Summary Judgment be DENIED.

## PROCEDURAL HISTORY

Claimant was previously found disabled on March 1, 2002 and awarded was Childhood Supplemental Security Income ("SSI") (Tr. 11).  On November 3, 2011, Defendant determined that Plaintiff was no longer disabled as of October 1, 2010 (Tr. 11). Plaintiff requested an administrative hearing, held on September 21, 2012 in Livonia, Michigan (Tr. 39).  Administrative Law Judge ("ALJ") Henry Perez, Jr. presided (Tr. 39). Plaintiff and Claimant, represented by attorney Joshua Moore, testified (Tr. 42-45, 46-53 ). On November 16, 2012, ALJ Perez found that Claimant's disability ended on October 1, 2010 (Tr. 29).  On January 8, 2014 , the Appeals Council denied review (Tr. 1-3).  Plaintiff filed for judicial review of the final decision on March 7, 2014.

## BACKGROUND FACTS

Claimant, born June 19, 1999, was 13 when  ALJ Perez issued his decision (Tr.  19, 29).  She alleges ongoing disability due to mental retardation, seizures, and an affective disorder.

**A. Plaintiff's Testimony**

Plaintiff offered the following testimony:

Her daughter ("Claimant") suffered from epilepsy, asthma, and a comprehension disorder (Tr. 42).  Claimant needed academic instructions "broke[n] down" into steps by a special teacher (Tr. 43).  Claimant used an inhaler for a respiratory condition (Tr. 43). Claimant had been experiencing asthma the past summer and had sought emergency

treatment two weeks earlier (Tr. 43-44). Claimant was unable to comprehend more than one conversation at once (Tr. 44). She last had a seizure (mild) about four months before the hearing (Tr. 45). The second most recent seizure was approximately 16 months before the hearing (Tr. 49-50). Claimant sought emergency treatment for asthma in May, 2011, November, 2011, and September, 2012 (Tr. 49). Claimant had just started learning algebra and was "struggling," but did not appear to experience difficulty in other courses at present (Tr. 51). Due to the history of seizures, Plaintiff was not able to participate in organized sports (Tr. 51).

### B. Claimant's Testimony

Claimant offered the following testimony:

She had trouble following more than one conversation at a time (Tr. 46). The asthma created exertional fatigue (Tr. 46). She did not always understand academic instructions and sought extra help from a "resource room teacher" who would give her individualized attention (Tr. 46). She did not feel bad about requiring extra help but noted that on occasion she became "emotional" while interacting with her mother (Tr. 47).

In response to questioning by the ALJ, Plaintiff stated that she was right-handed and currently in eighth grade (Tr. 48). She required "resource room" help with "mostly" math (Tr. 48). Plaintiff acknowledged that her writing could be "sloppy" (Tr. 48). She denied current problems keeping up with her class (Tr. 51). Her teachers sometimes expressed impatience with her inability to understand concepts the first time they were explained (Tr.

52). She got along with her classmates and had friends at school (Tr. 52). She was able to finish her homework (Tr. 52).

    **C.**    **Medical and Academic Evidence[1]**

**1. Treating and Academic Sources**

March, 2010 academic records show that Claimant experienced problems in vocabulary, reading comprehension, and in certain areas of mathematics (Tr. 235). Claimant was "secure" or "developing" in writing, spelling, and basic multiplication (Tr. 235). She exhibited good social skills (Tr. 236). The same month, Claimant sought treatment for a finger injury (Tr. 342). Bassam Bashour, M.D. noted that Claimant had failed to follow up with treatment for asthma since the previous November, noting that she was "doing quite well" with current treatment and did not experience asthma symptoms frequently (Tr. 342, 358-359). In April, 2010, an evaluation found that Claimant experienced average reading skills, "low average" oral language skills, and low range mathematical skills (Tr. 246-247, 255, 259). Claimant was "mainstreamed" in all classes (Tr. 278). Her assessment noted that she was frequently absent or tardy "due to medical conditions" (Tr. 279). A May, 2010 evaluation recommended placement in the general curriculum (Tr. 240). The evaluation states that she did not require special education, but required extra time for tests and the use of a math calculator (Tr. 240-241, 271-272). Claimant was deemed able to participate in

---

[1]Treatment for conditions unrelated to the disability claim, although reviewed, are omitted from the present discussion.

mainstream physical education (Tr. 241). The same month, treating notes state that her asthma was under control (Tr. 291, 340). The following month, Dr. Bashour reiterated that Claimant's asthma was "doing very well" on her current medication (Tr. 338). In September, 2010, Dr. Bashour noted "intermittent exacerbation" of the asthma (Tr. 336, 353). The following month, Dr. Bashour noted that Claimant's asthma was under "good control," and that she had not "had any seizure[s] for many years now" except one short seizure during a car accident (Tr. 335, 352).

April, 2011 treatment records for an ankle injury note the absence of breathing problems (Tr. 385-387). In November, 2011, Claimant sought emergency treatment for shortness of breath (Tr. 383). Treating records note "mild respiratory distress" with normal breathing sounds (Tr. 383). June, 2012 emergency treatment records state that Claimant reported wheezing and a sore right leg (Tr. 376). Breathing sounds were normal (Tr. 376). In September, 2012, an Individualized Education Program Team Report states that Claimant's progress in general education was "fair . . . due to excessive absences" but that she was making good progress toward the goals of the individualized program (Tr. 390). The Report noted that Claimant was eligible for the program due in part "to documented medical issues which include epilepsy, asthma, and severe allergies" (Tr. 397).

### 2. Non-Treating Sources

Documents created in 2002 state that Claimant was disabled pursuant to Listing 112.05D as a result of mental retardation combined with epilepsy (Tr. 222-234). She was

assigned a GAF of 45[2] (Tr. 226).

In July, 2010 Nick Boneff, Ph.D. performed a psychological evaluation of Claimant on behalf of the SSA, noting the prior diagnoses of a seizure disorder, rickets, and asthma (Tr. 306). Dr. Boneff noted that Claimant had been placed in a regular classroom and did not experience behavioral problems (Tr. 307). Claimant exhibited good short term and remote memory (Tr. 307-308). She appeared logical and "goal directed" (Tr. 308). She performed simple calculations without problems (Tr. 308). Dr. Boneff noted that Claimant displayed a number of "cognitive strengths" (Tr. 309). He assigned Claimant a GAF of 50 (Tr. 308-309).

The same month, N. Doss M.D. performed a physical examination on behalf of the SSA, noting a history of seizures and asthma (Tr. 312). Dr. Doss noted that the asthma had been diagnosed as "mild" and "intermittent" (Tr. 312). Despite the history of seizures, he noted that Claimant now experienced "about two seizures per year" (Tr. 314). The physical examination was unremarkable (Tr. 314). In September, 2010, Ann Babcock, M.A., performed an evaluation, finding that Claimant's ability to hear and communicate was unremarkable (Tr. 317-318). She found that Claimant experienced weaknesses in "receptive and expressive language" (Tr. 320). Babcock gave Claimant a "good with intervention"

---

[2] A GAF score of 41–50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job. *Diagnostic and Statistical Manual of Mental Disorders—Text Revision* ("*DSM–IV–TR*") 34, (4th ed.2000).

prognosis, noting the need for "short term therapy to improve . . . receptive and expressive language" skills (Tr. 320). The same month, Dr. Boneff placed Claimant in the "mildly retarded" category but noted that she demonstrated good short term memory and the ability to "pay attention" (Tr. 324).

The following month, Muhammad Ahmed, M.D. reviewed the consultative records, determining that despite the presence of the severe impairment of mild mental retardation, seizures, and asthma, Claimant did not meet or medically equal a listed impairment (Tr. 328). He found less than marked limitation in the domain of "Acquiring and Using Information" (Tr. 330). In the domain of "Attending and Completing Tasks," he found "less than marked limitation" (Tr. 330). In the domain of "Interacting and Relating to Others," Dr. Ahmed found that Claimant had no limitations (Tr. 330). He found no limitations in the domain of "Moving About and Manipulating Objects," (Tr. 331). He found no limitation in "Caring for Yourself" (Tr. 331). Last, he found "less than marked" limitation in the domain of "Health and Physical Well-Being" (Tr. 331). In April, 2011, Edward Czarnecki, Ph.D., Cheryl Lang, S.L.P., and Delois D. Daniels, M.D. adopted Dr. Ahmed's determination, finding that due to a "medical improvement," Claimant was no longer disabled (Tr. 368-374).

**D. The ALJ's Decision**

Citing the "Comparison Point Decision" ("CPD") of November 7, 2002, the ALJ found that "medical improvement" occurred as of October 1, 2010 (Tr. 14). The ALJ found that despite the severe impairments of "mild mental retardation and speech and language

delay," Claimant no longer met Listing 112.05 or met or equaled any other listed impairment in 20 C.F.R. 404, Subpart P, Appendix 1 (Tr. 18-19, 25). He found that in the domain of "Acquiring and Using Information," Claimant had "less than marked limitation" (Tr. 19-20, 28). In the domain of "Attending and Completing Tasks," he also found "less than marked limitation" (Tr. 21, 28). The ALJ noted that despite a lower IQ, Claimant's academic records showed that she was "motivated and artistic" (Tr. 21). He noted that Claimant was able to prepare and timely complete her homework assignments (Tr. 21).

In the domain of "Interacting and Relating to Others," the ALJ found that Claimant had no limitations (Tr. 22, 28). He noted that school records showed that Claimant was "friendly, able to communicate and be understood by others," and got along well with family, neighbors, and teachers (Tr. 22). The ALJ found no limitations in the domain of "Moving About and Manipulating Objects," noting that the medical examinations were "unremarkable" (Tr. 23, 28). The ALJ found no limitation in "Caring for Yourself," observing that Claimant was able to care for herself "at an age appropriate level" (Tr. 24, 29). Finally, the ALJ found "less than marked" limitation in the domain of "Health and Physical Well-Being," noting that the seizures were well controlled with medication (Tr. 24, 29).

The ALJ discounted the allegations of continuing disability by noting that in June, 2010, Claimant was "doing very well" on her current asthma medication (Tr. 26). He noted that Plaintiff reported In September, 2010 that Claimant had not had a seizure in 2009 (Tr. 26). He cited emergency room records for asthma showing only "mild respiratory distress"

(Tr. 27-28).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

### Childhood Benefits

42 U.S.C. § 1382c (a)(3)(C)(I) provides that "[a]n individual under the age of 18 shall

be considered disabled" if he or she "has a medically determinable physical or mental impairment which results in marked and severe functional limitations."[3] In evaluating whether a child is disabled, the Commissioner is to consider, in sequence, whether the child claimant 1) is "doing substantial gainful activity" 2) has a severe impairment, and if so 3) has "an impairment(s) that meets, medically equals, or functionally equals the listings." 20 C.F.R. § 416.924(a). In determining whether the child claimant is disabled at the third step, the Commissioner determines functional ability in six domains:

> (i) Acquiring and using information;
>
> (ii) Attending and completing tasks;
>
> (iii) Interacting and relating with others;
>
> (iv) Moving about and manipulating objects;
>
> (v) Caring for yourself; and,
>
> (vi) Health and physical well-being.
>
> 20 C.F.R. § 416.926a(b)(1).

To establish disability at the third step, "the impairment(s) must . . . result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." *Id.* A "marked" limitation is defined as an impairment(s) that "interferes seriously"

---

[3]Childhood claims are subject to the same 12-month durational requirement as adult claims. 42 U.S.C. § 1382c (a)(3)(C)(i)

with the ability "to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2). An "extreme" limitation "interferes *very* seriously" with the ability "to independently initiate, sustain, or complete activities"(emphasis added). 20 C.F.R. § 416.926a(e)(3).

## ANALYSIS

Plaintiff disputes the finding of a medical improvement, arguing that Claimant continues to meet Listing 112.05 (mental retardation).[4] *Plaintiff's Brief,* 9-11, *Docket #14.* She argues that Claimant meets Listing 112.05D, which requires both evidence of an IQ between 60 and 70 and an independent, significantly limiting impairment. *Id.* (citing Listing 12.05D)[5]. She contends that the seizures continue to be a significant disorder, arguing that the ALJ did not provide an explanation for his finding that the condition of seizures was no longer severe. *Id.* She contends further that the ALJ failed to articulate why "adjustment disorder" was not considered a severe impairment. *Id.* at 10. Finally, Plaintiff argues that the ALJ's finding that Claimant experienced the severe impairment of "speech and language delay," along with mild mental retardation, establishes entitlement to benefits under Listing 12.05(D). *Id.* at 10.

---

[4] On August 1, 2013, the term "mental retardation" was replaced with "intellectual disability." *Peterson v. Commissioner*, 552 F. App'x 533, 536 fn. 1 (6th Cir.2014). However, the requirements of the Listing remain substantively unchanged.

[5] Plaintiff uses the Listings 12.05 and 112.05 interchangeably. At the time of the administrative decision, Listing 12.05 pertained to "mental retardation" in adult disability claims while childhood claims were analyzed under Listing 112.05.

To meet Listing 112.05D, a claimant must show "significantly subaverage general intellectual functioning with deficits in adaptive functioning" along with (D) "[a] valid verbal, performance, or full scale IQ of 60 through 70 *and* a physical or other mental impairment imposing an additional and significant limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 112.05. The parties agree that Claimant has established an IQ between 60 and 70. The question is whether she experiences "an additional and significant limitation of function" apart from the condition of mental retardation.

Contrary to Plaintiff's claim, the ALJ did not err in finding that the condition of seizures no longer constituted a "significant limitation." First, he noted that Plaintiff testified that her daughter had experienced only two seizures in the past 12 months, that they were of less severity than those experienced in past years, and that the condition was well controlled with medication (Tr. 14). The ALJ noted elsewhere that Claimant had not been hospitalized for seizures since 2002 and that a recent neurological examination was wholly unremarkable (Tr. 18). He cited recent treating records showing that the condition was well controlled (Tr. 18). The ALJ's findings are supported by Dr. Bashour's September, 2010 observation that Claimant had not "had any seizure[s] for many years now" (Tr. 18, 335, 352).

Likewise, Plaintiff's contention that the ALJ erred by declining to find that "adjustment disorder" constituted a significant condition is without merit. She claims that although the ALJ accorded "great weight" to Dr. Boneff's findings, he "never mentions or evaluates" Dr. Boneff's finding of an adjustment disorder. *Plaintiff's Brief* at 10. This argument reflects a misreading

of both the ALJ's decision and the medical transcript. First, the ALJ accorded "great weight" to Dr. Boneff's September, 2010 evaluation of Claimant's intellectual abilities, but only "some weight" to Dr. Boneff's July, 2010 psychological findings (Tr. 17, 308, 324). Consistent with the "some weight" finding, the ALJ considered but explicitly discounted Dr. Boneff's July, 2010 finding of an adjustment disorder, noting that the reports that Claimant "worrie[d] a lot and [was] easily depressed was provided by Claimant's mother" (Tr. 17). The ALJ noted that in contrast, Claimant herself reported a wide range activities and a good ability to interact with others (Tr. 17). As such, the ALJ did not err in finding that adjustment disorder did not constitute a significant impairment.

The question of whether "speech and language delay" constitutes a significant limitation independent of mild mental retardation is a closer call. Plaintiff takes issue with the ALJ's finding that "speech and language delay" was a "severe" impairment at Step Two of the analysis but was not an "additional and significant" impairment as required to meet Listing 112.05D at Step Three. *Plaintiff's Brief* at 10 (citing Tr. 25). This argument, while close, does not provide grounds for remand. First, the finding that "speech and language delay" was a severe impairment does not imply that the condition was automatically an "additional and significant" condition for purposes of 112.05D. Under § 416.924(c), the term "severe" refers to any condition creating more than "a slight abnormality." Listing 112.00 states that if the proposed "additional and significant" impairment "does not cause limitations that are 'severe,'" it will not be considered "additional and significant" under 112.05D. On the other hand, the Listing does not state that

clearing the "severe" threshold at Step Two, with nothing more, guarantees that the condition will also be found to be an "additional and significant" condition at Step Three.[6]

Second, the ALJ found explicitly that the speech and language delay, while more than minimal, did not cause "'additional and significant'" limitations for purposes of 112.05D (Tr. 25). He cited September, 2010 consultative records showing a "good" prognosis (Tr. 25, 320). He noted that the September, 2010 records showed that Claimant had never been enrolled in "speech language services" (Tr. 26). The ALJ cited the academic records showing that Claimant was able to "communicate and be understood by others" (Tr. 22).

Further, as noted by Defendant, the evidence supports the conclusion that the condition of speech and language delay was not an "additional" limitation, but rather, "part and parcel" of the diagnosis of the mild mental retardation diagnosis. *Defendant's Brief,* 12-17, *Docket #17*. Defendant cites SSR 98-1p which states that to establish an "additional significant limitation," for purposes of Listing 112.05D, the "child's problems in speech must be separate from his/her mild mental retardation." 1998 WL 147011, *3 (March 30, 1998).

---

[6] I am mindful that at least one court in this district has found that the determination that an impairment is "severe" suggests that it is also "additional and significant" for purposes of a mental retardation analysis. *Hutchinson v. Commissioner of Social Sec.* 2013 WL 4604561, *15 (E.D.Mich. August 29, 2013). However, consistent with the language of 112.00, *Hutchinson* concedes that "finding an impairment is 'severe' at Step 2 does not mandate a *per se* finding that such an impairment imposes a significant work related limitation under Listing 12.05(c) . . ." *Id.* The court found however, that "the ALJ should, at least, discuss the distinction between the two." In the present case, the ALJ provided a well supported rational for the finding that the "severe" condition did not satisfy Listing 112.05D.

SSR 98-1p notes that speech problems resulting from a brain injury, cleft palate, or condition of "unknown etiology" would constitute "additional" limitations.  However, speech problems do not automatically imply an "additional" condition:

> It is possible for a child with mental retardation to have limitations in speech that do not constitute an impairment separate from the mental retardation. In a child with mental retardation, speech development is often commensurate with the level of cognitive functioning. Therefore, in the absence of an impairment of speech that is separate from the child's mental retardation, a speech pattern that has been and continues to be consistent with the child's general intellectual functioning is not regarded as separate from the mental retardation and will not be found to satisfy the criterion in Listings 112.05D and 112.05F for a physical or other mental impairment imposing additional and significant limitation of function. *Id.*

Conversely, an independent speech condition can be shown from speech and language skills "not . . . commensurate" with the "general  intellectual functioning." *Id.*

The medical transcript contains no suggestion that the delayed speech resulted from a condition independent of the mild mental retardation.  Claimant's speech limitations were commensurate with her level of functioning.  As noted by Defendant, consultative testing revealed "only mild to moderate restrictions in oral expression and receptive and expressive language." *Defendant's Brief* at 17 (citing 320).  April, 2010 academic reports state that she experienced "low average" oral language skills  consistent with the IQ test results (Tr. 246-247). None of the medical or academic records suggest that the delayed speech resulted from a condition independent of mild mental retardation.[7]  Aside from the lack of evidence showing that

---

[7] While the ALJ's finding that Claimant experienced the severe impairments of mild

the language delay resulted from an independent condition, the transcript as a whole generously supports the finding that Claimant experienced a medical improvement and was no longer disabled as of October 1, 2010.

Because ALJ's finding that Claimant no longer met Listing 112.05D is well supported and adequately explained, the administrative determination should remain undisturbed.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment be GRANTED and that Plaintiff's Motion for Summary Judgment be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon

---

mental retardation *and* speech and language delay (emphasis added) could be interpreted to state that he found that the speech condition constituted a separate condition, he stated one paragraph later that he found that the condition did not create "additional and significant limitation . . ." (Tr. 25).

this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                              s/R. Steven Whalen
                                              R. STEVEN WHALEN
                                              UNITED STATES MAGISTRATE JUDGE

Dated: February 18, 2015

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on February 18, 2015, electronically and/or by U.S. mail.

                                              s/Carolyn M. Ciesla
                                              Case Manager